**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **AU-LIONNE N. AGATAKO,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MORGAN & MORGAN, PLLC,**<br><br>**Defendant.** | **Civil Action No.**<br>**26-11812-BEM** |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO DISMISS**

**MURPHY, J.**

This action arises out of alleged employment discrimination experienced by Plaintiff Au-Lionne N. Agatako while she was employed as a litigation paralegal for Defendant Morgan & Morgan Boston, PLLC ("Morgan & Morgan"). Agatako brings three claims against Morgan & Morgan: retaliation under Title VII (Count I), sex discrimination and hostile work environment under Title VII (Count II), and unlawful termination (Count III). For the reasons stated herein, the Court will grant Morgan & Morgan's motion to dismiss.

## I. Factual and Procedural Background

The Court draws the following facts from Agatako's complaint, Dkt. 1 ("Complaint" or "Compl."), and accepts them as true for the purposes of the instant motion.

Agatako, a resident of Massachusetts, was employed by Morgan & Morgan as a litigation paralegal "beginning on June 16, 2025." *Id.* ¶¶ 1, 6. Her team leader was Nicholas Brown. *Id.* ¶ 7. Agatako alleges that during a meeting in early January 2026, Brown instructed Agatako to "put your shoulders back," a comment Agatako found "unwelcome." *Id.* ¶ 9. Also in January

2026, Brown "directed [Agatako] to come closer to view his computer screen" and referred to her as "honey." *Id.* ¶ 10. This comment "caused [Agatako] to retreat and feel extremely uncomfortable." *Id.* "During this same timeframe," on a Zoom call, Brown "instructed Plaintiff to turn on her camera and stated 'I want to see your face,' in a manner that was unwelcome and made her uncomfortable." *Id.* ¶ 11.

On January 28, 2026, Agatako was placed on a Performance Improvement Plan ("PIP") which outlined six new objectives and additional responsibilities. *Id.* ¶ 12. According to the PIP, Agatako had previously failed to submit a mediation memorandum until one day before its deadline. *Id.* ¶ 13. Agatako disputes this claim and asserts that she "never submitted such a document and was never required to." *Id.* Accordingly, Agatako claims the PIP was "pretextual." *Id.* ¶ 12.

Over the next two months, Agatako "repeatedly sought guidance from Brown on how to improve her performance." *Id.* ¶ 14. In response, Brown told Agatako that she "need[ed] to show [him]" and that she "need[ed] to figure it out." *Id.* Agatako claims Brown's comments were "vague, unhelpful, and, in context, carried an inappropriate and uncomfortable subtext." *Id.*

On March 5, 2026, Agatako submitted a formal written complaint against Brown to human resources. *Id.* ¶ 15. In an email submitting her formal complaint, Agatako claimed that Brown had retaliated against her by placing her on a PIP after Agatako raised concerns about "excessive micromanagement" from a different supervisor, Arthur Bailin. *See* Dkt. 12-1 at 5. Agatako sent that email to D'Lynn Larson, among others, at 2:12 p.m. Compl. ¶ 15. Twenty-four minutes later, at 2:36 p.m., Agatako was terminated via an email from Larson. *Id.* ¶ 17.

Agatako filed her complaint in this Court on April 17, 2026. *See generally* Compl. She brings three claims against Morgan & Morgan: retaliation under Title VII (Count I), *id.* ¶¶ 19–21;

sex discrimination or hostile work environment (Count II), *id.* ¶¶ 22–23; and unlawful termination, *id.* ¶ 24.[1] Morgan & Morgan filed its motion to dismiss on June 26, 2026. *See generally* Dkt. 12. The Court held a hearing on September 15, 2026, and took the motion under advisement.

## II. Legal Standard

Courts analyzing claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure must determine whether a plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making its determination, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). At the pleading stage, a plaintiff need not demonstrate that he is likely to prevail, but the "claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *García-Catalán v. United States*, 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint," *id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

[1] Agatako cites to no statutory or common law authority for her claim of "unlawful termination."

## III. Discussion

### A. Count I: Retaliation

Agatako alleges that her termination, which occurred just twenty-four minutes after she filed a formal claim of retaliation against Brown, constituted retaliation itself under Title VII. Compl. ¶¶ 19–21. Moving for dismissal, Morgan & Morgan argues that Agatako's formal complaint does not constitute protected activity, because the memorandum attached to her formal complaint does not allege sexual harassment or discrimination. Dkt. 12 at 5–9.

Title VII prevents employers from retaliating against an employee for "oppos[ing] any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3a. To establish a prima facie case of retaliation, a plaintiff must allege "that (1) they 'engaged in protected activity under Title VII,' (2) they 'suffered an adverse employment action,' and (3) 'the adverse employment action was causally connected to the protected activity.'" *Neece v. City of Chicopee*, 106 F.4th 83, 94 (1st Cir. 2024) (quoting *Collazo v. Bristol-Meyers Squibb Mfg., Inc.*, 617 F.3d 39, 46 (1st Cir. 2010)). "A report of conduct that allegedly violates Title VII is protected if the employee who reported the conduct had a 'good faith, reasonable belief that the underlying challenged actions of the employer violated [Title VII].'" *Hernández v. Wilkinson*, 986 F.3d 98, 103 (1st Cir. 2021) (quoting *Fantini v. Salem State Coll.*, 557 F.3d 22, 32 (1st Cir. 2009)).

The Court agrees with Morgan & Morgan that Agatako fails to plausibly allege the first element: protected activity. Agatako claims that she reported "her supervisor for hostility, demeaning conduct, and sexual harassment in the workplace." Compl. ¶ 19. While her memorandum to human resources recites the elements of a Title VII retaliation claim, Dkt. 12-1

at 5,[2] nowhere does she allege Brown discriminated against her on the basis of sex, *see generally id.* Instead, the memorandum outlines a workplace dispute about Agatako's dissatisfaction with *another* supervisor's management style and the scope of her responsibilities. *See, e.g.*, *id.* at 5 ("I sent Arthur a message on Teams regarding his excessive micromanagement."); *see also id.* at 6 ("I must add that the three meetings were demeaning and confusing, as I was given a different approach to how I should do things each time.").[3] Even reviewing her workplace complaint and memorandum to Human Resources in the light most favorable to Agatako, they cannot constitute protected activity under Title VII because they do not allege discrimination on the basis of sex. *See e.g.*, *Crawford v. Salve Regina Univ.*, 178 F.4th 734, 746 (1st Cir. 2026) (affirming grant of motion to dismiss where plaintiff did not "include any facts tending to show that the grievance concerned conduct protected under Title VII"); *see also Young v. Brennan*, 2017 WL 1843696, at *6 (D. Mass. May 8, 2017) (dismissing retaliation claim where plaintiff's report was "wholly irrelevant to plaintiff's protected status"). Mentioning Title VII, without more, cannot constitute protected activity. *See Burns v. Johnson*, 18 F. Supp. 3d 67, 74 (D. Mass. 2014) (dismissing retaliation claim where plaintiff "does not allege that when she initially complained about [her employer] she identified her gender as . . . motivation" (emphasis omitted)). Accordingly, Count I is dismissed.[4]

---

[2] In her Complaint, Agatako directly quotes the memorandum she submitted with her formal complaint. Compl. ¶¶ 15–16. The Court may consider "the relevant entirety of a document integral to or explicitly relied upon in the complaint." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (quoting *Clorox Co. P.R. v. Proctor & Gamble Comm. Co.*, 228 F.3d 24, 32 (1st Cir. 2000)). The Court will therefore consider Agatako's formal complaint and accompanying memorandum in its entirety.

[3] Agatako's opposition cites no case law in its effort to salvage her claim. Dkt. 13 at 2–3.

[4] Morgan & Morgan also challenges Agatako's claim under the third element: causal connection. Dkt. 12 at 8–9. Because the Court dismisses Agatako's claim for failure to plausibly allege the first element, it need not reach the parties' arguments regarding causal connection.

### B. Count II: Sex Discrimination/Hostile Work Environment

Citing a series of interactions with Brown, Agatako also alleges that Brown's conduct constituted discrimination on the basis of sex which created a hostile work environment under Title VII. Compl. ¶¶ 22–23. Morgan & Morgan argues that Agatako fails to plausibly allege harassment based upon her sex or that the alleged conduct was sufficiently severe or pervasive. Dkt. 12 at 9–14. To prevail on a hostile work environment claim,

> [a] plaintiff must ultimately prove that she (1) is a member of a protected class; (2) was subject to harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment; (5) the harassment was both objectively and subjectively offensive; and (6) there exists some basis for employer liability.

*Crawford*, 178 F.4th at 745 (citing *Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215–16 (1st Cir. 2016)). However, when considering a motion to dismiss, the Court need only assess whether Plaintiff has alleged facts "rendering her claim plausible." *Crawford*, 178 F.4th at 745. Furthermore, in Title VII cases, "[c]ourts are supposed to use '[c]ommon sense, and an appropriate sensitivity to social context,' to distinguish between . . . innocuous behavior and severely hostile or abusive conduct." *Ugurhan Akturk Kosereis v. Rhode Island*, 331 F.3d 207, 216 (1st Cir. 2003) (quoting *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 82, (1998)).

Here, Agatako fails to plausibly allege that Brown's conduct was sufficiently severe or pervasive. Agatako claims that Brown, instructed her to "put [her] shoulders back" during a meeting in his office, Compl. ¶ 9, called her "honey" on one occasion, *id.* ¶ 10, said "I want to see your face" on a Zoom call in which Agatako's camera was turned off, *id.* ¶ 11, and placed Agatako on a PIP, *id.* ¶ 12. Agatako characterizes these actions as "gendered," *id.* ¶ 8 and "an escalating pattern of conduct," Dkt. 13 at 5. But even assuming these comments were made because of her gender, Brown's comments do not rise to the same level of severity or pervasiveness of claims that

typically survive a motion to dismiss in this District. *See, e.g.*, *Sisco v. DLA Piper LLP*, 833 F. Supp. 2d 133, 141 (D. Mass. 2011) (denying motion to dismiss where defendant employee made repeated sexual advances and "offensive physical contact" with plaintiff); *see also Saari v. Allegro Microsystems, LLC*, 436 F. Supp. 3d 457, 463 (D. Mass. 2020) (denying motion to dismiss where defendant employee "made sexual comments, touched [plaintiff] inappropriately, and stared at her body on a 'constant[],' 'frequent,' or 'regular' basis"). Unlike those cases, Plaintiff alleges three disparate, one-off comments, none of which were repeated and none of which can plausibly be considered severe. *Cf. Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d 225, 229–30 (1st Cir. 2007) (identifying a slew of "sexually degrading, gender-specific epithets" that have "been consistently held to constitute harassment based upon sex"); *see also Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 225–26 (1st Cir. 2012) ("After all, 'Title VII does not prohibit . . . simple teasing, offhand comments, and isolated incidents (unless extremely serious)'" (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998))).

Aside from a brief recitation of one of Defendant's cited cases, Agatako cites only one case in her opposition to dismissal of Count II, *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). Dkt. 13 at 5. But the facts in that case were of a manifestly different degree of severity. *See Harris*, 510 U.S. at 19 (alleging frequent insults explicitly related to plaintiff's gender such as "[y]ou're a woman, what do you know?," "sexual innuendos about . . . women's clothing," and requests by a male employee "to get coins from his front pants pocket"). Nor did the unanimous

Supreme Court, in that opinion, even determine whether the alleged conduct was "severe or pervasive."[5]

The Court does not minimize the fact that Brown's comments may have made Agatako feel uncomfortable. "To be sure, plaintiff's complaint is rife with factual assertions that, if proven, would demonstrate a difficult and uncomfortable workplace." *Quinn v. Austin*, 802 F. Supp. 3d 314, 323 (D. Mass. 2025). Ultimately, however, the law requires more than just discomfort to state a claim for a hostile work environment. Count II is dismissed.

### C. Count 3: Unlawful Termination

Finally, Agatako alleges, in one conclusory sentence, that her "termination was unlawful and discriminatory." Compl. ¶ 24. Morgan & Morgan argues in opposition that Agatako fails to point to any statutory authority for unlawful termination. Dkt. 12 at 14–15. In her opposition, Agatako, citing no case law, argues that whether her "wrongful termination is ultimately remedied under Title VII or another applicable legal theory is a question of law." Dkt. 13 at 6. Agatako identifies no other basis for the unlawful nature of her termination aside from the alleged violations of Title VII. Those claims have been dismissed. *See supra* Sections III.A–B. Lacking any other basis for Agatako's claim of unlawful termination, the Court also dismisses Count III.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: September 18, 2026

[5] Instead, the Supreme Court clarified the standard for "hostile work environment," noting that courts should examine "all the circumstances" including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. The Court then remanded to the Court of Appeals for further proceedings. *Id.*